Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
**Law Offices of Todd M. Friedman, P.C.**
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Tel: (323) 306-4234
Fax: (866) 633-0228

Attorneys for Plaintiffs
JEANETTE BETANCOURT

### IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE BETANCOURT, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br>vs.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY; and DOES 1-10, inclusive,<br><br>  Defendant. | Case No.: 8:22-cv-153<br><br>**CLASS ACTION COMPLAINT**<br><br>For Violations of:<br><br>1. Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*);<br>2. Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*); and<br>3. Conversion.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### JURISDICTION AND VENUE

1. This Class Action Complaint is brought pursuant to Federal Rule of Civil Procedure 23 for, *inter alia*, alleged violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. 1693, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* Additionally,

1

Plaintiff alleges that Defendant's conduct constitutes common law conversion.

2. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under a federal statute, namely the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*

3. Venue is proper in the Central District of California court because a substantial portion of the events giving rise to Plaintiff's claims took place in this district.

## THE PARTIES

4. Plaintiff JEANETTE BETANCOURT ("Betancourt") is, and at all relevant times was, a resident of Orange County, California.

5. On information and belief, Defendant AMERICAN INCOME LIFE INSURANCE COMPANY ("Defendant") is, and at all relevant times was, an insurance company incorporated in Indiana and with its principal place of business in Texas.

6. The identities of Defendants designated as DOES 1-10 are currently not known and may include natural persons and businesses entities including product manufacturers, medical providers, professionals, subsidiaries, divisions, professionals, contractors, estates, administrators of estates, and trusts. Any conditions precedent to the filing of suit and/or the naming of a Defendant herein that may apply have been, or will be, complied with in full by Plaintiff, including the filing of claims, notices, and/or such other action as maybe required by applicable law. Plaintiff will amend this complaint, according to all applicable laws, with the true names and capacities of any Doe defendant once ascertained.

7. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, were the agents, servants, employees, co-conspirators, and/or joint venturers of each other, acting within the scope and authority of said agency, employment and/or venture and with the permission and consent of their co-Defendant(s) and/or that all of said acts were

subsequently performed with the knowledge, acquiescence, ratification and consent of the respective principals and that the benefits thereof were accepted by said principals.

8. Plaintiff is informed and believes, and thereon allege, that the acts and conduct herein alleged by Defendants, and each of them, was duly authorized, ordered and directed by the respective and collective Defendant corporate employers and its officers and management-level employees. In addition, said corporate employers participated in the aforementioned acts and conduct of their employees, agents and representatives, and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, Defendants, and each of them, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved and consented to all said acts and conduct.

9. Plaintiff is informed and believes, and thereon allege, that Defendants, and each of them, were and are the alter ego and/or successors in interest of every other Defendant. At all times there existed such a unity of interest and ownership such that any separateness ceased to exist, and at all relevant times the one was a mere shell or instrumentality through which the other(s) carried out their business. Each Defendant exercised such complete control over the other(s) and so dominated it to achieve individual goals. Defendant, and each of them, so ignored business formalities that any separateness was merely a fiction and did not exist and should be deemed not to exist. At all relevant times, it is alleged that that Defendants, and each of them, acted for itself as well as on behalf of its alter ego(s).

10. At all times hereinafter mentioned, Plaintiff will show, according to proof, that Defendants, and each of them, were and are the alter egos, successors, and/or successors in interest, of the others.

**FACTUAL ALLEGATIONS**

11. Plaintiff incorporates by reference all preceding paragraphs as though

3
CLASS ACTION COMPLAINT; JURY DEMAND

set forth fully herein.

12. Beginning in 2019, Plaintiff opened and paid for a life insurance policy with Defendant.

13. In the summer of 2021, Plaintiff upgraded her insurance policy.

14. In consideration of her upgraded insurance policy, Plaintiff paid Defendant $99.52 each month until she cancelled her policy on September 24, 2021.

15. While upgrading her policy, Defendant's insurance agent asked Plaintiff if she knew of any friends or family who might be interested in purchasing a similar policy.

16. Plaintiff recommended her sister, Adriana Garcia.

17. Defendant's agent promptly contacted Plaintiff's sister and sold her an insurance policy.

18. However, Plaintiff's sister does not have a checking account and, as such, Defendant's agent was unable to complete the process of signing Plaintiff's sister.

19. On information and belief, Defendant's agent used Plaintiff's checking account information to complete the process of signing Plaintiff's sister.

20. As a result, Plaintiff has been charged three (3) times for her sister's insurance policy.

21. Defendant charged Plaintiff on July 2, 2021 for $78.55, September 23, 2021 for $81.15, and October 13, 2021 for $87.37.

22. On information and belief, Defendant's standard practice is to automatically withdraw monthly insurance premiums from its customers personal bank accounts via electronic fund transfers ("EFTs").

23. Plaintiff never gave Defendant permission to withdraw funds from her checking account to pay for her sister's insurance policy.

24. Accordingly, Plaintiff requested that Defendant refund the charges

made to her checking account. Defendant has failed to respond favorably to this day.

## CLASS ALLEGATIONS

25. Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

26. The material circumstances surrounding Plaintiff's experience were the same as, or substantially similarly to, that of other putative Class Members, all of whom were automatically charged by Defendant without authorization.

27. Plaintiff thus brings this action on behalf of herself and all others similarly situated, as a member of the proposed class of consumers defined as follows:

**Class:**
All persons in the United States from whose bank accounts Defendant initiated a recurring automatic electronic fund transfer not authorized in writing by the parties' original agreement, within the one year prior to the filing of this Complaint.

**California Subclass:**
All Class Members who resided in California at the time they executed an original agreement authorizing recurring automatic electronic fund transfers by Defendant.

28. Defendant, its affiliates, employees, agents, and attorneys and the Court are excluded from the Class.

29. Plaintiff reserves the right to amend the Class and/or Subclass and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

30. While the exact number and identities of Class Members are unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and thereon alleges, that the Class includes hundreds, if not thousands, of members. Plaintiff is informed and believes, and thereon alleges, that Class Members may be easily ascertained by the records

maintained by Defendant.

31. No violations alleged in this complaint are contingent on any individualized interaction of any kind between members of the Class and Defendant.

32. This suit is thus properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of the Class Members is impracticable and the disposition of all claims in one action will provide substantial benefits to the parties, to absent Class Members, and to the Court.

33. There are questions of law and fact common to the Class affecting all parties that predominate over questions which may affect individual Class Members, including:

    a. Whether Class Members entered into agreements with Defendant to have automatic recurring electronic payments drawn from their personal accounts to be paid to Defendant for services;

    b. Whether Class Members executed written agreements memorializing their authorization of recurring automatic electronic fund transfers;

    c. Whether Defendant provided Class Members with copies of fully executed written agreements memorializing the terms for automatic recurring electronic fund transfers;

    d. Whether, despite not receiving proper authorization, Defendant took unauthorized automatic or recurring payments from Class Members' accounts;

    e. Whether Plaintiff and members of the Classes are entitled to equitable and/or injunctive relief; and

    f. Whether Defendant's unlawful practices harmed Plaintiff and other Class Members.

34. Plaintiff represents, and is a member of, the proposed Class and

Subclass.

35. Plaintiff's claims are typical of all Class Members and are based on the same legal theories.

36. Plaintiff has no interest antagonistic to, or in conflict with, the Class.

37. Plaintiff will fairly and adequately protect the interests of all Class Members and has retained attorneys experienced in the prosecution of consumer class actions.

38. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford, and wanted to proceed with, individual claims, such redundant litigation would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and exacerbate the delay and expense to all parties, and to the courts, resulting from multiple trials of the same complex issues. The prosecution of separate actions by individual Class Members would thus create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

39. By contrast, proceeding with the claims alleged on a class basis presents fewer management concerns, conserves the resources of the parties and of the court system, and protects the rights of all Class Members.

40. As discussed in detail below, Defendant have acted, or refused to act, in ways generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to all Class Members.

41. Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable because, on information and belief, the putative Class consists of hundreds, if not thousands, of individuals and is so numerous that joinder of all

putative Class Members, whether otherwise required or permitted, is impracticable. Information confirming the actual number of putative Class Members is in Defendant's exclusive control.

42. Pursuant to Fed. R. Civ. P. 23(b) (3), class certification is appropriate because no unusual difficulties will likely occur in the management of the proposed Class, as all questions of law or fact to be litigated at the liability stage are common to the putative Class and all compensatory relief is concomitant with a finding of liability and can be calculated objectively on a class-wide basis.

## FIRST CAUSE OF ACTION

**Violation of the Electronic Funds Transfer Act**

(15 U.S.C. § 1693, *et seq.*)

**Individually and on behalf of the Class**

43. Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

44. The Federal Reserve Board ("Board") implements the EFTA through Regulation E, which includes an official staff commentary and applies to accounts for which there is an agreement for EFT services to or from the account between a consumer and a third party. *See* Staff Commentary 205.3(a)-1.

45. Section 903(10) of the EFTA provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10).

46. Defendant failed to comply with the writing and notice requirements of section 907(a) of the EFTA with respect to the EFTs described herein and as to all Class Members. 15 U.S.C. § 1693e.

47. Section 907(a) of the EFTA provides in pertinent part that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall

be provided to the consumer when made." 15 U.S.C. §1693e(a).

48. Section 205.l0 (b) of Regulation E provides similarly that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

49. Section 205.10(b) of the Board's Staff Commentary to Regulation E states that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." 12 C.F.R. § 205.10(b), Supp. I, comment 5.  The Staff Commentary states further that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." 12 C.F.R. § 205.10(b), Supp. I, comment 6.

50. On information and belief, Defendant debited Class Members' bank accounts on a recurring basis without first obtaining for all such transactions a written authorization signed or similarly authenticated by the respective Class Members for preauthorized EFTs from their personal bank accounts, thereby violating § 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

51. On information and belief, Defendant debited Class Members' personal bank accounts on a recurring basis without providing each Class Member a copy of a written authorization signed or similarly authenticated by the respective Class Members for preauthorized EFTs, thereby violating the EFTA pursuant to 15 U.S.C. § 1693e(a) and 12 C.F.R. § 205.10(b).

## SECOND CAUSE OF ACTION

Violation of the Unfair Competition Law

(Cal. Bus. & Prof. Code § 17200, *et seq.*)

**Individually and on behalf of the Subclass**

52. Plaintiff incorporates by reference all preceding paragraphs as though

set forth fully herein.

53. Actions for relief under the UCL may be based on any business act or practice that is unlawful, unfair or fraudulent within the broad statutory definition. A plaintiff is required to provide evidence of a causal connection between a defendant's violative conduct and the alleged harm to show that the defendant's conduct caused or was likely to cause substantial injury to consumers. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.

54. As described herein, Plaintiff and Class Members have suffered injury in fact and been deprived of property as a result of Defendant's business acts and practices in California, which denied Plaintiff and Class Members monies transferred electronically without prior written authorization. Defendant's conduct is thus substantially injurious to Plaintiff and Class Members, and Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

## UNLAWFUL

55. The UCL prohibits "any unlawful…business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*.

56. The violation of any state, federal, or local law is sufficient to satisfy the UCL's "unlawful" prong. Plaintiff contends, *inter alia*, that Defendant's failure to comply with the EFTA is an unlawful practice under the UCL.

57. As explained above, Defendant deceived Plaintiff and other Class Members by initiating EFTs not authorized by the parties' original written agreements and continuing to make such unauthorized transfers automatically on a recurring basis.

58. Defendant's conduct therefore caused and continues to cause economic harm to consumers.

59. Defendant' conduct thus constitutes an "unlawful" business practice

10
CLASS ACTION COMPLAINT; JURY DEMAND

or act under the UCL.

60. Without injunctive relief in the form of an order directing Defendant to cease and desist the offending conduct, Defendant's will likely continue undeterred, and monetary compensation alone is not an adequate remedy.

61. Defendant have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief, including an order requiring Defendant to cease such acts of unlawful, unfair, and fraudulent business practices immediately and requiring Defendant to correct its actions, pursuant to Cal. Bus. & Prof. Code § 17203.

## THIRD CAUSE OF ACTION

### Conversion

### Individually and on behalf of the Subclass

62. Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

63. During the period from approximately July 2021 through October 2021, Defendant made three (3) recurring automatic EFTs in the amount of $78.55, $81.15, and $87.37 from Plaintiff's account, to pay fees for her sister's policy, without permission or prior authorization from Plaintiff.

64. Defendant thus intentionally deprived Plaintiff of funds in his account without Plaintiff's consent.

65. At all relevant times, Defendant acted with malice, recklessness, and deliberate disregard for Plaintiff's contractual and personal rights.

66. As a proximate result of Defendant's actions, Plaintiff was deprived of approximately $250 and experienced anxiety and mental distress.

67. Defendant has similarly illegally withdrawn funds from Subclass Members without authorization depriving those individuals in the same fashion as Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

1. An order certifying the Class and California Subclass and appointing Plaintiff as Representative;
2. An order certifying the undersigned counsel as Class Counsel;
3. An order requiring Defendant, at their own cost, to notify all Class Members of the and deceptive conduct herein;
4. Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Subclass Members during the relevant class period;
5. Punitive damages, as allowable, in an amount determined by the Court or jury;
6. Any and all statutory enhanced damages, including under EFTA;
7. Pre- and post-judgment interest;
8. All reasonable attorneys' fees and costs of suit incurred herein; and
9. All other relief to which Plaintiff, Class Members, and Subclass Members may be entitled as determined by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all applicable claims.

Date: January 28, 2022         LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:     /s/ Todd M. Friedman
Todd M. Friedman
Adrian R. Bacon
Attorneys for Plaintiff
JEANETTE BETANCOURT